UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ALICIA LYNN LEBLANC                    CIVIL ACTION NO. 6:17-cv-01666

VERSUS                                 JUDGE JAMES

U.S. COMMISSIONER,                     MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed.

### Administrative Proceedings

The claimant, Alicia Lynn LeBlanc, fully exhausted her administrative

remedies before filing this action in federal court.  She filed an application for

supplemental security income benefits ("SSI") on January 9, 2015, alleging

disability beginning on September 15, 2006.[1]  Her application was denied.[2]  The

claimant requested a hearing, which was held on December 6, 2016 before

---

[1]     Rec. Doc. 9-1 at 178.

[2]     Rec. Doc. 9-1 at 115.  The claimant filed two previous applications for Social Security
benefits, both of which were also denied.  Rec. Doc. 9-1 at 71-77 (ALJ's ruling of September 18,
2009); Rec. Doc. 9-1 at 85-94 (ALJ's ruling of May 21, 2013).

Administrative Law Judge Carolyn Smilie.[3]  The ALJ issued a decision on January 9, 2017, in which she concluded that the claimant was not disabled within the meaning of the Social Security Act from October 14, 2014 through the date of the decision.[4]  The claimant asked for review of the decision, but the Appeals Council concluded that no basis existed for review of the ALJ's decision.[5]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  The claimant then filed this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

The claimant was born on March 1, 1967.[6]  At the time of the ALJ's decision, she was forty-nine years old.  She obtained a GED,[7] but has no relevant work

---

[3]     The transcript of the hearing is in the record at Rec. Doc. 9-1 at 35-67.

[4]     The ruling is found in the record at Rec. Doc. 9-1 at 21-31.  The only application for benefits in the record is dated January 9, 2015, and this Court does not know why the decision references an application dated October 14, 2014.  However, a similar reference is found in the Disability Determination Explanation (Rec. Doc. 9-1 at 104) and in the Disability Determination (Rec. Doc. 9-1 at 115).  Further, certain statements in the application are "as of October 14, 2014." (Rec. Doc. 9-1 at 179).  The record establishes that the claimant applied for benefits on two prior occasions, and was found not to be disabled in ALJ decisions dated September 18, 2009 (Rec. Doc. 9-1 at 71-77) and May 21, 2013 (Rec. Doc. 9-1 at 85-94).

[5]     Rec. Doc. 9-1 at 4.

[6]     Rec. Doc. 9-1 at 41, 178.

[7]     Rec. Doc. 9-1 at 288.

experience, having last worked as a substitute teacher in 2005.[8]  She alleged that she has been disabled since September 15, 2006[9] due to post-traumatic stress disorder ("PTSD"), shoulder problems, asthma, emphysema, chronic obstructive pulmonary disease ("COPD"), anemia, and back problems.[10]

Considering the number of mental and physical conditions alleged and the length of time since the alleged onset of disability, the record contains surprisingly few treatment notes from health care providers.  The claimant's primary care physician is Dr. David Tate, a family practice physician in Kaplan, Louisiana.  Dr. Tate's records are handwritten, brief, and almost completely illegible.  They establish that the claimant treated with Dr. Tate from March 31, 2014 to November 9, 2016 for conditions including right shoulder pain, fluid retention, gastrointestinal reflux disease ("GERD"), cough, wheezing, stress, anxiety, sinusitis, irritable bowel, constipation, and COPD.  This Court located no assessment of the claimant's functional capabilities in Dr. Tate's notes and no assignment of functional limitations resulting from any of the claimant's conditions.

On March 28, 2015, the claimant was evaluated by Dr. Jean-Victor Bonnaig of Med Plus Lafayette, Louisiana at the request of Louisiana Disability

---

[8]      Rec. Doc. 9-1 at 186-189,194, 209.

[9]      Rec. Doc. 9-1 at 178.

[10]     Rec. Doc. 9-1 at 104-105, 194.

Determinations.[11]    The claimant drove herself to the appointment.  She told Dr.
Bonnaig that she was diagnosed with PTSD in 2014, which she attributed to being
raped as a child.  She stated, however, that she takes no medication for that condition
and does not see a psychiatrist.  The claimant told Dr. Bonnaig that her shoulder
problems started around 2003, that she has a limited range of motion in her right
shoulder, that her right shoulder joint dislocates, and that she takes muscle relaxants
for that condition.  She reported that she has had asthma since she was a child and
was diagnosed several years ago with emphysema/COPD, which causes fatigue and
shortness of breath.  She stated that she takes medication daily for her asthma
condition.  She also reported that she smoked a pack of cigarettes per day and had
done so for forty years.  She reported having been diagnosed with anemia in the past.
She stated that she consumed alcohol occasionally but did not use any illicit drugs.
The claimant reported a history of hypertension but stated that she took no
medication for that condition.  She reported having had sharp chest pain for the past
six months, a history of stomach ulcers, and pain in her lumbar vertebrae.  She
reported difficulty in lifting more than five pounds with either arm and stated that
she cannot mop, vacuum, or cook.  She claimed to be able to sweep, wash dishes,
and drive for only five to fifteen minutes at a time.  She stated that she could shop

---

[11]        Rec. Doc. 9-1 at 269-285.

for groceries for only fifteen to thirty minutes at a time, and could climb only one flight of stairs. She denied being able to care for a yard or mow grass. She stated that she can write her name and balance a checkbook.

Upon examination, Dr. Bonnaig found that the claimant could get up and out of a chair and on and off the examination table with no difficulty. She walked without difficulty, and her gait was normal. She wheezed and had a productive cough, but she had no shortness of breath at rest and a normal chest cage. She did not appear to be using accessory muscles for respiration. Her pulses were normal, and she had no edema. She reported no emergency room visits or hospitalizations in the preceding two years. There was no evidence of scoliosis or kyphosis in her spine, there was no spasm of the paraspinous muscles, she was able to walk on her toes and heels without difficulty, she could squat and recover, she was able to bend over and touch her toes, and her tandem heel walking was unremarkable. The claimant had normal grip strength in both hands, she had normal fine and gross manipulative skills in both hands, and the range of motion in both hands was normal. Her reflexes were normal, but she had decreased sensation in her right hand. She also exhibited a limited range of motion in her right shoulder. A pulmonary function study was performed, but the results of the study were not explained by Dr. Bonnaig.

Dr. Bonnaig's impression was that the claimant had a limited ability to reach, handle, or grasp and can only lift and carry less than five pounds occasionally on

both the left and right sides. Additionally, he found that the claimant had limitations regarding exposure to dust, fumes, or temperature changes.

On April 30, 2015, the claimant was examined by clinical psychologist David N. Landry, Ph.D. at the request of Disability Determination Services.[12] The claimant drove herself to the appointment. Dr. Landry found that she was adequately reliable, and he detected no signs of exaggerating or malingering.

The claimant reported to Dr. Landry that she had a violent and abusive childhood. She stated that her stepfather sexually abused her for several years, beginning when she was approximately four to six years of age, which resulted in her being diagnosed with PTSD. She reported a long history of anxiety problems and stated that her primary care physician prescribed anti-anxiety medication, which made her sleepy. She reported that her anxiety symptoms were well managed at that time, although she became anxious in social situations and had some difficulty in large crowds. She reported that she was then currently taking Ativan (for anxiety), Flexeril (a muscle relaxer), Adipex (an appetite suppressant), Topiramate (an anti-convulsant that is used to treat mood disorders and migraine headaches), and Albuterol (for asthma). The claimant reported that she drinks alcohol occasionally but Dr. Landry noted that she was diagnosed with Alcohol Dependence during a

---

[12]        Rec. Doc. 9-1 at 287-291.

psychological examination in 2011.  The claimant told Dr. Landry that she injured her right shoulder when she was twelve years old, that she had arthroscopic surgery on her right shoulder in 2003, and that her shoulder started dislocating in 2006 and continued to dislocate every night when she was in bed.  She also complained of back pain.

The claimant told Dr. Landry that she is unable to work due to her shoulder condition and reported that she was unable to lift heavy objects or reach with her right arm.  She stated that she had not worked in many years.  She also claimed to be unable to perform household chores but can drive independently and cook small meals.  She reported no difficulty in counting money or managing finances.

Dr. Landry's mental status examination revealed that the claimant was in a normal, tranquil, or euthymic mood, her judgment was fair, her abstract reasoning and fund of information were average, her thought content was intact, linear, and coherent, she had no hallucinatory or delusional perceptions, and she had no suicidal or homicidal ideation.  She had normal adaptive functioning, and her intellectual functioning was low average.

Dr. Landry opined that the claimant's ability to understand, recall, and carry out simple instructions was not impaired, and she should be able to understand, recall, and carry out some complex instructions.  He found that her ability to sustain attention to perform simple, repetitive tasks for two-hour blocks of time was "most

7

likely not impaired." He found that her ability to get along with others in a work setting did not appear to be markedly impaired. He opined that there were no mental health symptoms that would prevent her from persisting and remaining productive over the course of a routine forty-hour work week.

On October 22, 2015, the claimant was seen in the emergency room at University Hospital in Lafayette, Louisiana for gall bladder symptoms and high blood pressure.[13] An x-ray of her right shoulder showed no evidence of subluxation or dislocation but showed a calcified structure in the axillar pouch consistent with a loose body. Further imaging was recommended. Supine and erect x-rays of the claimant's abdomen showed no acute abnormalities; instead, the findings were suggestive of constipation.

On December 6, 2016, the claimant testified at a hearing regarding her symptoms, her medical treatment, and her functional impairments. She explained that problems with her right shoulder began before she was a teenager. She had surgery on the shoulder, and she was taking medication for pain and inflammation in the shoulder, which was prescribed by Dr. Tate. The medications for her shoulder were Flexeril, Tramadol, and Mobic. She stated that she cannot pick up anything heavy with her right arm and that her medications make her drowsy. She testified

---

[13]     Rec. Doc. 9-1 at 301-309.

that her right shoulder dislocates at night when she is in bed. She further testified that she is supposed to wear a brace on her shoulder at night but does not do so because it makes her claustrophobic. She confirmed that she was diagnosed with PTSD but has never received any mental health treatment other than Dr. Tate prescribing Ativan and Cymbalta for her anxiety and depression. She stated that she was a severe asthmatic and was diagnosed with COPD. She is prescribed ProAir and Advair for those conditions. She also stated that she was anemic, which was a recurring problem throughout her life. Finally, she stated that Dr. Tate was treating her for low back pain. She testified that she does not like dealing with the public and tries not to go anywhere in public. She reported that she can sit for ten to fifteen minutes without changing position and can walk about fifty to seventy-five feet without resting. Although the claimant testified at the hearing that a gall bladder scan indicated that she needs surgery, Dr. Tate's treatment notes for October 26, 2016 indicated that the HIDA scan showed normal gall bladder functioning. The claimant stated that Dr. Tate referred her to Dr. Perets for her gall bladder, who recommended updated diagnostic testing.

The claimant now seeks reversal of the Commissioner's denial of her application for SSI benefits.

## Analysis

### A.   The Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[14]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[16]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[17]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[18]  Conflicts in

---

[14]      *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[15]      *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

[16]      *Hames v. Heckler*, 707 F.2d at 164 (citations omitted).

[17]      42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173.

[18]      *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022.

the evidence[19] and credibility assessments[20] are for the Commissioner to resolve, not the courts. Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.[21]

## B.    Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[22] A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[23] A claimant is disabled only if his physical or mental impairments are so severe that he is unable to not only do his previous work, but cannot,

---

[19]    *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

[20]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

[21]    *Wren v. Sullivan*, 925 F.2d at 126.

[22]    42 U.S.C. § 1382(a)(1) & (2).

[23]    42 U.S.C. § 1382c(a)(3)(A).

considering his age, education, and work experience, participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area where the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[24]

## C.   <u>The Evaluation Process and The Burden of Proof</u>

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This requires the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work.[25]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[26] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[27]  The claimant's residual functional capacity is used at the fourth step to

---

[24]      42 U.S.C. § 1382c(a)(3)(B).

[25]      20 C.F.R. § 404.1520.

[26]      20 C.F.R. § 404.1520(a)(4).

[27]      20 C.F.R. § 404.1545(a)(1).

determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[28]

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[29]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[30]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[31]  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[32]

---

[28]    20 C.F.R. § 404.1520(e).

[29]    *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

[30]    *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[31]    *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302.

[32]    *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

**D.**    **The ALJ's Findings and Conclusions**

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since October 14, 2014.[33] This finding is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: chronic pulmonary insufficiency, residual effects from repair of the right shoulder, and degenerative disc disease.[34] This finding is supported by substantial evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. The claimant challenged this finding.

The ALJ found that the claimant has the residual functional capacity to perform light work except that she can never push or pull hand controls on the right; never reach overhead on the right; occasionally reach in all other directions on the right; never climb ladders and scaffolds; never crawl; and never be around unprotected heights. Additionally, the claimant must never be around humidity and

---

[33]    Rec. Doc. 9-1 at 23. As noted in Footnote 4, above, this Court does not know why this date was used by the ALJ. However, the evidence in the record supports a finding that the claimant has not worked since 2005. Rec. Doc. 9-1 at 194, 209.

[34]    Rec. Doc. 9-1 at 23.

wetness, must avoid concentrated exposure to pulmonary irritants, and must never be around extreme heat.[35]  The claimant challenged this finding.

At step four, the ALJ found that the claimant had no past relevant work.[36]  The claimant did not challenge this finding.

At step five, the ALJ found that the claimant was not disabled from October 14, 2014 through January 9, 2017 (the date of the decision) because there are jobs in the national economy that she can perform.  The claimant challenged this finding.

**E.**    **The Allegations of Error**

The claimant contends that the ALJ erred (1) by finding that the claimant's combination of impairments does not meet or medically equal a listed impairment; (2) by finding that the claimant has the residual functional capacity to perform light work and, by implication, sedentary work; and (3) by substituting her own assessment in place of Dr. Bonnaig's analysis of the claimant's functionality.

**F.**    **Do the Claimant's Impairments Meet or Equal a Listed Impairment?**

The claimant argued that the ALJ erred in failing to cite substantial evidence to support her conclusion, at Step Three of the sequential analysis, that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  But the claimant has the burden

---

[35]    Rec. Doc. 9-1 at 25.

[36]    Rec. Doc. 9-1 at 30.

15

of proof at Step Three.[37]   Therefore, "[a]n ALJ's failure to set out a basis for his decision at Step Three affects substantial rights when the claimant appears to have met the burden to demonstrate that she meets or equals a listing."[38]   In this case, however, the claimant did not make the type of showing that would trigger the ALJ's duty to present a more exhaustive analysis at Step Three.  Instead, the claimant failed to establish that she meets or equals a listing.

The burden imposed on the claimant at Step Three requires the claimant to identify the medical signs and laboratory findings that support all of the criteria of a particular listing.[39]  When a claimant fails to meet this burden, "courts must conclude that substantial evidence supports the ALJ's finding that Listings-level impairments are not present."[40]  Whether an impairment or a combination of impairments meets a listing is a medical question that can be answered only by medical evidence.[41]  The

---

[37]     *Greenspan v. Shalala*, 38 F.3d at 236.

[38]     *Morin v. Berryhill*, No. A-17-CV-787-AWA, 2018 WL 4559000, at *4 (W.D. Tex. Sept. 21, 2018 (citing *Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007)).

[39]     *McCaskill v. Dep't of Health & Human Servs*., 640 Fed. App'x 331, 334 (5th Cir. 2016). See, also, *McCuller v. Barnhart*, 72 Fed. App'x 155, 158 (5th Cir. 2003); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

[40]     *Washington v. Barnhart*, 413 F.Supp.2d 784, 793 (E.D. Tex. 2006) (citing *Selders v. Sullivan*, 914 F.2d at 620).  See, also, *Heck v. Colvin*, 674 Fed. App'x 411, 415 (5th Cir. 2017); *Gewin v. Astrue*, No. 10-1008, 2011 WL 3924232, at *3 (W.D. La. Aug. 3, 2011), *report & recommendation adopted*, 2011 WL 3954877 (W.D. La. Sept. 6, 2011).

[41]     20 C.F.R. §§ 404.1526(b), 416.926(b); *McCuller v. Barnhart*, 72 Fed. App'x 155, 158 (5th Cir. 2003); *Selders v. Sullivan*, 914 F.2d at 619; *McKnight v. Astrue*, No. 07-1654, 2008 WL

specified medical criteria of a listing are deliberately designed to be demanding and stringent because they lead to a presumption of disability, making further inquiry unnecessary.[42]  For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, the claimant must present medical findings equal in severity to all the criteria for the one most similar listed impairment.[43]  "A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment."[44]  Furthermore, the ALJ has the responsibility for deciding medical equivalence.[45]

In this case, the ALJ expressly mentioned in her ruling the broad categories of listings that she considered, and she stated that she compared the objective evidence against the criteria of those listings.  She did not engage in a step-by-step analysis of any set of listing criteria or the medical evidence that might support the

---

4387114, at *3 (W.D. La. Aug 15, 2008), *report & recommendation adopted*, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), *aff'd*, 340 Fed. App'x 176 (5th Cir. 2009).

[42]    *Anderson v. Astrue*, No. 3:11-CV-0051-K-BH, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), *report & recommendation adopted*, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)).

[43]    *Sullivan v. Zebley*, 493 U.S. at 531.

[44]    *Sullivan v. Zebley*, 493 U.S. at 521.

[45]    20 C.F.R. § 416.926(e).

criteria.  But procedural perfection in administrative proceedings is not required if the substantial rights of a party are not affected,[46] and those rights are affected at Step Three only when it appears that the claimant has satisfied his burden.  In this case, however, the claimant did not identify any listing that she claims to meet nor did she explain how the medical evidence establishes that all of the criteria of that listing are satisfied.  Accordingly, the ALJ's failure to conduct a point-by-point analysis of one or more listings is immaterial.  Because the claimant failed to satisfy her burden of proving that her impairments meet or equal the criteria of a listing, the ALJ's failure to perform a more detailed Step Three analysis did not affect the claimant's substantive rights and does not require remand of the Commissioner's decision.  This argument lacks merit.

## G.    Is the Claimant Capable of Light Work?

The claimant argued that the ALJ erred in finding that she is capable of performing a modified range of light work.  In support of that argument, the claimant stated that "the record lacks any evidence sufficient to controvert [the claimant's] testimony regarding her own functionality and ability to perform work."[47]

---

[46]    *Audler v. Astrue*, 501 F.3d at 448.

[47]    Rec. Doc. 12 at 5.

18

The ALJ is responsible for determining a claimant's residual functional capacity.[48]  In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations.[49]  The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.[50]  Furthermore, a claimant's subjective complaints must be corroborated by objective medical evidence.[51]

Here, the ALJ credited the claimant's subjective testimony to the extent it was supported by the medical evidence in the record, incorporating several modifications to the full range of light work in the residual functional capacity evaluation based on the claimant's description of her functional limitations.  Accordingly, the ALJ did not err in assessing the claimant's residual functional capacity.  This argument lacks merit.

---

[48]     *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

[49]     *Martinez v. Chater*, 64 F.3d at 176.

[50]     *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

[51]     *Chambliss v. Massanari*, 269 F.3d at 522; *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

**H.    Did the ALJ Substitute her Assessment for that of Dr. Bonnaig?**

The claimant's final argument is that, in evaluating her residual functional capacity, the ALJ substituted her own assessment of the claimant's impairments for the opinions of the examining consultant, Dr. Bonnaig.  In particular, the claimant complained about the ALJ's statement that the limitations endorsed by Dr. Bonnaig "are not supported by the doctor's own physical findings."[52]

An ALJ should not "play doctor" or substitute his own evaluation of the evidence for that of the physicians who actually treated or examined the claimant.[53] The Fifth Circuit has cautioned ALJs not to succumb to the temptation to play doctor because common sense can mislead and lay intuition about medical phenomena are often wrong.[54]   Here, the claimant is arguing that the ALJ failed to resist that temptation and impermissibly substituted her own judgment for that of Dr. Bonnaig.

In his report, Dr. Bonnaig opined that the claimant had a limited ability to reach, handle, or grasp; is capable of lifting and carrying less than five pounds with both hands; and is capable of lifting that small amount only occasionally.  But the only impairments that Dr. Bonnaig's physical examination of the claimant revealed

---

[52]    Rec. Doc. 9-1 at 30.

[53]    *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (citing *Schmidt v. Sullivan*, 914 F.2d 117, 188 (7th Cir. 1990)).

[54]    *Frank v. Barnhart*, 326 F.3d at 622.

were that she had decreased sensation in her right hand and a limited range of motion in her right shoulder.  All other objective findings regarding the claimant's hands and arms were normal.  Her reflexes were normal.  She had normal grip strength in both hands, she had normal fine and gross manipulative skills in both hands, and the range of motion in both hands was normal.  Despite those findings, Dr. Bonnaig opined that the "claimant has limited ability to reach, handle[,] or grasp."[55]  Dr. Bonnaig also opined that the claimant was able to occasionally lift and carry less than five pounds with both her left and right hands.  Therefore, it appears to this Court – as it did to the ALJ – that Dr. Bonnaig's conclusions are not supported by his own objective findings.  Therefore, this Court finds that the ALJ did not substitute her own judgment for that of Dr. Bonnaig and did not err in finding that the limitations he assigned are not supported by his medical findings.  This argument lacks merit.

## Conclusion and Recommendation

IT IS THE RECOMMENDATION of this Court that the decision of the Commissioner be AFFIRMED and that this matter be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of

---

[55]    Rec. Doc. 9-1 at 274.

this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[56]

Signed in Lafayette, Louisiana, this 21st day of December 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[56]     See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).